**Michael F. RAMSEY, Plaintiff,**

v.

**Mark BUSCH, Poss, C.O., and John Doe, Sgt., Defendants.**

No. 93–CV–921S(F).

United States District Court, W.D. New York.

Aug. 25, 1998.

---

Michael F. Ramsey, Dannemora, New York, plaintiff pro se.

Dennis C. Vacco, Attorney General for the State of New York, Joseph F. Reina, Assistant Attorney General, of counsel, Buffalo, New York, for defendants.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

The parties to this action filed a consent to proceed before the undersigned on June 10, 1994. The matter is currently before the court on Defendants' motion for summary judgment (Doc. # 55), filed November 12, 1997.

## BACKGROUND

Plaintiff commenced this 42 U.S.C. § 1983 action *pro se* on September 10, 1993, while incarcerated at the Clinton Correctional Facility in Dannemora, New York. Plaintiff claims that Defendants Busch and Poss, corrections officers at Attica Correctional Facility violated his rights under the First, Fifth, Eighth and Fourteenth Amendments on September 26, 1992 when, while Plaintiff was incarcerated at Attica, Defendants "set up" Plaintiff by exposing him to an assault by another inmate. Plaintiff also alleges that the Defendant corrections officers' actions were authorized by Defendant Doe, a supervisor who conspired with Busch and Poss to "cover up" evidence of the inmate's earlier assault on Plaintiff. Plaintiff further alleges that Defendant Busch retaliated against him for filing complaints with regard to the second assault. Defendants Busch and Poss answered the complaint on March 21, 1994.

Defendants moved *ex parte* on November 12, 1996 for leave to amend their answer to add an affirmative defense based on estoppel. On November 18, 1996, Plaintiff moved *ex parte* for leave to file an amended complaint. Plaintiff's affidavit in opposition to Defendants' motion for leave to file an amended answer was filed on November 20, 1996. An order filed December 3, 1996, established December 16, 1996 as the deadline for Defendants to respond to Plaintiffs' motion to amend his complaint and for Plaintiff to respond to Defendants' motion to amend their answer. Defendants responded to Plaintiff's motion to amend his complaint with a letter to the court dated December 16, 1996, indicating that Defendants did not object to Plaintiffs' amendment of his complaint, but requesting that following such amendment both sides be permitted to file dispositive motions.

By order dated January 15, 1997 the undersigned granted Plaintiff's motion for leave to file an amended complaint and directed Plaintiff to file the amended complaint by February 3, 1997. Defendants' request for leave to file dispositive motions was also granted and such motions were directed to be filed by February 17, 1997.

Defendants moved for summary judgment on February 18, 1997. Plaintiff opposed that motion and filed his amended complaint on February 26, 1997.

Defendants Busch and Poss answered the amended complaint on July 1, 1997. By letter to the court dated September 29, 1997, Defendants explained that they moved for summary judgment on February 18, 1997, under the assumption that Plaintiff had not filed his amended complaint as Defendants were never served with a copy of the filed amended complaint. As such, the additional allegations contained in Plaintiff's amended complaint were not addressed in Defendants' summary judgment motion. Defendants therefore withdrew their pending summary judgment motion and requested the court issue a new scheduling order setting a new deadline for the filing of dispositive motions. That request was granted on September 30, 1997 and Defendants were given until November 7, 1997 to file dispositive motions. That deadline was later extended to November 10, 1997, and again to November 14, 1997.

Defendants filed their summary judgment motion on November 12, 1997. Although Defendants acknowledge that Ramsey asserts his claims under the First, Fifth, Eighth and Fourteenth Amendments, Defendants' Memorandum of Law, filed November 12, 1997 (Doc. # 57) ("Defendants' Memorandum of Law"), at 1, their motion for summary judgment specifically addresses only the Eighth Amendment and retaliation claims. Plaintiff's response, filed December 22, 1997, does not respond to many of the substantive arguments advanced by Defendants in support of summary judgment. Instead, Ramsey contends that he was never advised of the new scheduling order permitting Defendants to file another motion for summary judgment and that Defendants' counsel and the undersigned have conducted private conferences from which Ramsey has been excluded. Defendants did not file any reply. The court finds Ramsey's Fifth and Fourteenth Amendment claims were pleaded as the basis for assertion of the Eighth Amendment claim and that his First and Fourteenth Amendment claims were pleaded

as the basis for his retaliation claim. Accordingly, summary judgment is considered as to those claims as well.

Based on the following, Defendants' motion for summary judgment is GRANTED.

## FACTS[1]

On September 26, 1992, Plaintiff, Michael F. Ramsey, while incarcerated in the Special Housing Unit ("SHU") at Attica Correctional Facility was escorted to the showers by Defendant correctional officers Busch and Poss at approximately 7:00 P.M. The most direct route from Ramsey's cell to the showers led past the cell of another inmate, William Hernandez. As they passed Hernandez's cell, Hernandez assaulted Ramsey by throwing some liquid containing human feces and body fluids at him. Neither Busch nor Poss was hit by these substances at that time. Busch and Poss directed Ramsey to continue toward the showers where, upon his arrival, Ramsey was interviewed by Defendant Sargent John Doe, the area supervisor.

Ramsey was permitted to shower after speaking with Doe and was given clean clothing. After a nurse from Attica's medical staff examined Ramsey, he was escorted back to his cell by Busch and Poss. As Ramsey, Busch and Poss passed Hernandez's cell, Hernandez again threw some more liquid containing human feces at the men, this time hitting all three. Ramsey, Busch and Poss were examined by medical personnel and given the opportunity to shower. Ramsey was then returned to his cell and Busch and Poss were relieved from duty for the remainder of their shifts.

A misbehavior report charging Hernandez with committing an assault was issued and Hernandez was then moved to a plexiglass fronted cell. The misbehavior report, however, describes only the assault during which Hernandez managed to hit Ramsey, Busch and Poss with the fecal substances, and does not set forth the facts of the first assault which hit Ramsey alone. Hernandez's history of committing both unhygenic and violent acts is documented in prison records. For example, earlier in the day of the assaults at

issue, Hernandez was disciplined for flooding the prison gallery floor with soapy water, creating a safety hazard and delaying the shower program pending cleanup of the gallery floor. Additionally, prison records indicate Hernandez had been throwing things out of his cell for three days prior to the incident and that he had to be disciplined for refusing to turn in his empty food containers following meals. Hernandez used those containers to prepare and hold the feces mixture involved in this matter. There is, however, no indication in either Defendants' or Plaintiff's papers that Defendants were aware of these prior incidents by Hernandez.

Ramsey maintains that Hernandez should have been placed in a plexiglass fronted cell following the soapy water throwing incident, but was not. Defendants state that they would have earlier moved Hernandez to a plexiglass fronted cell, but none was available at that time. Ramsey further alleges that Defendants did not have to take the same route in escorting him back to his cell after his first shower as other routes were available that did not lead past Hernandez's cell or that Defendants could have left Ramsey at the shower until they moved Hernandez to another location before taking Ramsey back to his cell. Defendants contend that to either take Ramsey back to his cell via a different route, which would have required escorting Ramsey through another company, i.e., a group of cells within the prison, or to move Hernandez from his cell would have disturbed prison order and created other security risks.

Ramsey filed administrative grievances regarding the incident, specifically arguing that Hernandez had assaulted him twice that day, not once as indicated in the misbehavior report. According to Ramsey, Defendant Busch had informed the other inmates prior to the incidents that Ramsey was "snitching" on inmate Hernandez, causing the other inmates to threaten and harass Ramsey. On November 25, 1992, Busch searched Ramsey's cell allegedly looking for contraband, although Ramsey maintains that the search was intended to discourage Ramsey from

---

1. The fact statement is taken from the pleadings and motion papers filed in the action.

writing letters and filing further complaints regarding the matter.

Ramsey subsequently commenced an action in the New York Court of Claims based on negligence regarding the incident at issue. On August 12, 1993, that court ruled Defendants' action in escorting Ramsey past Hernandez's cell such that Ramsey was again hit with excrement was negligent and awarded Ramsey $200 as damages.

### DISCUSSION

Summary judgment will be granted when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). The moving party for summary judgment bears the burden of establishing the nonexistence of genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Celotex, supra*, at 331, 106 S.Ct. 2548.

The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. *Rattner, supra*, at 209. In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. *Anderson, supra*, at 255, 106 S.Ct. 2505; *Rattner, supra*, at 209.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson, supra*, at 247–48, 106 S.Ct. 2505. *See also Lipton v. The Nature Company*, 71 F.3d 464, 469 (2d Cir.1995). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex, supra*, at 322–23, 106 S.Ct. 2548. A material issue of fact is "genuine" if it provides a basis for "a rational trier of fact to find for the non-moving party." *Matsushita, supra*, at 587, 106 S.Ct. 1348. "Mere conclusory allegations or denials" in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Lipton, supra*, at 469.

Ramsey alleges Defendants violated his civil rights under 42 U.S.C. § 1983. Pursuant to § 1983, an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States.

In the instant case, Ramsey claims that his constitutional rights under the First, Fifth, Eighth and Fourteenth Amendments were violated when he was assaulted by Hernandez and Defendants failed to take adequate precautions to prevent Ramsey from being assaulted again. Specifically, Ramsey alleges that, following Hernandez's initial assault upon him, by escorting him past Hernandez's cell after Ramsey had showered, rather than taking an alternative route, which was available, failing to place Hernandez in a plexiglass fronted cell or temporarily removing Hernandez from his cell while Ramsey was escorted back to his own cell, Defendants

Busch and Poss deliberately "set up" and exposed Ramsey to the second assault. Ramsey also asserts that Defendants Busch, Poss and Doe conspired to deprive him of his civil rights by failing to include any reference to the initial assault in the misbehavior report written against Hernandez. Ramsey further contends that Busch and Poss acted in bad faith in reporting only the second incident as they used that incident to obtain time off with pay. Finally, Ramsey claims that Busch's actions caused other inmates to threaten and harass him on account of several grievances Ramsey filed in connection with the matter.

### 1. *Failure to State a Claim*

■ Ramsey asserts that Defendants violated his Fifth, Eighth and Fourteenth Amendment rights by knowingly and deliberately escorting him from the showers back to his cell via the same route past Hernandez's cell, thus permitting Hernandez to assault Ramsey a second time. Amended Complaint, ¶¶ 10, 14. Ramsey further alleges that Defendants failed to follow clearly established security procedures which would have prevented the second assault. *Id.,* ¶ 11. Although Defendants admit that the factual allegations of this claim support a finding of negligent conduct, Defendants' Memorandum of Law at 13, Defendants maintain there is no evidence which establishes a violation of Ramsey's civil rights. *Id.* at 12.

■ The Eighth Amendment requires that inmates be furnished with basis human needs, including "reasonable safety." *Helling v. McKinney,* 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (citing *DeShaney v. Winnebago County Dep't. of Social Services,* 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)). The confinement of inmates in unsafe conditions constitutes "cruel and unusual punishment." *Helling, supra* (citing *Youngberg v. Romeo,* 457 U.S. 307, 315–16, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)). "[A]n inmate's claim that prison officials failed to protect him from the violent actions of other inmates may state a viable 42 U.S.C. § 1983 cause of action." *Hendricks v. Coughlin,* 942 F.2d 109, 113 (2d Cir.1991).

In the instant case, Ramsey alleges that Defendants failed to protect him from the second assault by Hernandez. Amended Complaint, ¶ 10. That Defendants arranged to have Ramsey examined by Attica's medical staff after each assault indicates they understood and appreciated that such assaults posed a threat to Ramsey's health and safety. As such, the court finds that Ramsey has stated an Eighth Amendment claim under § 1983.

Although Defendants do not specifically seek dismissal of the Fifth and Fourteenth Amendment claims Ramsey asserts in connection with his Eighth Amendment claim, the court is authorized to *sua sponte* dismiss any portion of a prisoner's complaint which "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(b)(1). As this matter is before the court pursuant to a consent to proceed before a magistrate judge, the undersigned may, pursuant to 28 U.S.C. § 636(c)(1), *sua sponte* dismiss any portion of Ramsey's complaint which "is frivolous, malicious, or fails to state a claim."

It is basic that the Eighth Amendment is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Wilson, supra,* at 296, 111 S.Ct. 2321 (citing *Robinson v. California,* 370 U.S. 660, 666, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962)). The court finds, therefore, that Ramsey has asserted the Fourteenth Amendment only insofar as it renders Defendants' actions which Ramsey has challenged subject to scrutiny for violations of Ramsey's Eighth Amendment rights. The court also finds that Ramsey has similarly asserted the Fifth Amendment, although that amendment pertains only to federal action and there is no indication in the record that Defendants' actions amounted to federal actions. Thus, Ramsey's assertion of the Fifth Amendment is frivolous and fails to state a claim as the amended complaint provides no grounds for relief. Further, although both the Fifth and Fourteenth Amendments provide grounds for substantive due process challenges, Ramsey's amended complaint makes no reference to any deprivation of substantive due process and, as such, the court also finds that Ram-

sey has not stated a due process claim under either the Fifth or Fourteenth Amendment.

### 2. *Qualified Immunity*

██ In the instant case, based on the record presented, the court finds that Defendants are qualifiedly immune for their actions. Qualified immunity shields government officials who perform discretionary functions from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Washington Square Post No. 1212 v. Maduro,* 907 F.2d 1288 (2d Cir.1990). Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective level of reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 568–69 (2d Cir.1996). A right is clearly established if it (1) was defined with reasonable specificity, (2) its existence has been affirmed by either the Supreme Court or the relevant circuit court, and (3) a reasonable defendant official would have understood under the existing law that his acts were unlawful. *Brown v. City of Oneonta, N.Y. Police Dep't,* 106 F.3d 1125, 1131 (2d Cir.1997). If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may be entitled to qualified immunity. *Robison v. Via,* 821 F.2d 913, 920–21 (2d Cir.1987). A defendant is entitled to summary judgment based on qualified immunity "if the defendant adduce[s] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Id.,* at 921 (internal quotation omitted). Stated another way, a defendant is entitled to qualified immunity under the ob-

jectively reasonable standard "if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995).

██ Further, where the objective reasonableness of an officer's actions depends on disputed facts, summary judgment is properly denied. *Rivera v. United States,* 928 F.2d 592, 607 (2d Cir.1991); *Brawer v. Carter,* 937 F.Supp. 1071, 1082 (S.D.N.Y. 1996). Provided that no factual issues are disputed, however, the application of qualified immunity to the facts is a question of law for the court to decide. *Finnegan v. Fountain,* 915 F.2d 817 (2d Cir.1990). A finding of liability under the Eighth Amendment requires that Defendants acted with deliberate indifference toward Ramsey's right to be free of assaultive conduct by other inmates. *Hendricks v. Coughlin,* 942 F.2d 109, 112–13 (2d Cir.1991). Accordingly, in this case Defendants' entitlement to qualified immunity turns on whether, in light of pre-existing law, the unlawfulness under the Eighth Amendment of escorting Ramsey past the cell of inmate Hernandez who had, only a short time earlier assaulted Ramsey by throwing human excrement at him, would have been apparent to a reasonable prison official on September 26, 1992, the date of the incident, such that failing to avoid the risk amounted to deliberate indifference to Ramsey's rights.

As noted, Defendants' account of the incident in which they escorted Ramsey back to his cell via the same route which passed Hernandez's cell is consistent with Ramsey's version of the incident. As such, there are no material issues of fact in dispute and the court's inquiry turns to whether Defendant's actions, in light of clearly established law in existence as of September 26, 1992, were in violation of Ramsey's Eighth Amendment rights.

The court's research indicates that neither the Supreme Court nor the Second Circuit had, as of the date of the incident, specifically established that failing to protect an inmate from being assaulted with human excrement presents a colorable Eighth Amendment claim. The closest case on point was decided

*after* the incident in question and did not conclude that such conduct violates a clearly established right as that the issue was not specifically presented by the incarcerated *pro se* plaintiff. *Porter v. Coughlin*, 964 F.Supp. 97, 104–105 (W.D.N.Y.1997). There, the court denied defendant prison officials' motion for summary judgment on the basis that the plaintiff *may* have had colorable argument for Eighth Amendment violation based on defendants' placement of plaintiff in cell in close proximity to feces-throwing inmates, although it was incorrectly presented as a Fourteenth Amendment claim.

Whether Defendants' challenged actions violated a clearly established right is not, however, dependent on whether identical conduct has previously been held to violate a prisoner's constitutional rights. In *LaBounty v. Coughlin*, 137 F.3d 68, 74 (2d Cir.1998), the court held that although a prison official's failure to rid the prison facility of friable (exposed and present in the ambient air) asbestos which resulted in an inmate's health problems had not been specifically determined a constitutional violation, such conduct was within the purview of the Eighth Amendment's prohibition against cruel and unusual punishment and it was for the trier of fact to decide whether the contours of such right were sufficiently established that a reasonable officer would understand that exposing an inmate to friable asbestos could violate the Eighth Amendment. Thus, so long as Ramsey's right to be protected from Hernandez's second assault is within the contours of the Eighth Amendment protection as of September 26, 1992, the date of the incident, Defendants' failure to protect Ramsey from that assault violated Ramsey's clearly established Eighth Amendment rights.

The constitutional prohibition against the confinement of inmates under barbaric and inhumane conditions was clearly established by September 1992. *Wilson v. Seiter*, 501 U.S. 294, 301, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Such conditions have been held to include failing to protect an inmate from violence at the hands of another inmate, *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), as well as failing to protect a prisoner from exposure to human waste. *Sostre v. McGinnis*, 442 F.2d 178, 194 n. 27 (2d Cir.1971) (citing *Wright v. McMann*, 387 F.2d 519, 521 (2d Cir.1967) (cell was encrusted with excrement); *Hancock v. Avery*, 301 F.Supp. 786, 791–92 (M.D.Tenn.1969) (hole in cell for human wastes flushed irregularly by prison guards)). Further, it is evident from the undisputed facts that Defendants appreciated the seriousness of the risk to Ramsey's well-being presented by the feces-throwing assault as Defendants permitted Ramsey to shower and provided him with clean clothing after both incidents. Accordingly, the court finds that Ramsey's Eighth Amendment right to be free of an assault involving the use of human excrement was clearly established as of the date of the incident.

Where a clearly established right has been violated, "the defendants may nonetheless establish immunity by showing that reasonable persons in their position would not have understood that their conduct was within the scope of the established prohibition." *In re State Police Litigation*, 88 F.3d 111, 123 (2d Cir.1996). The question thus remains whether Defendants' actions in failing to act to prevent a second assault by Hernandez on Ramsey as he was escorted back to his cell from the showers were objectively reasonable, judged from the perspective of a reasonable prison official in light of the facts and circumstances which were confronting them at the time of the incident without regard to their underlying intent and motivation. *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Javid v. Scott*, 913 F.Supp. 223, 226 (S.D.N.Y.1996). Specifically, to defeat qualified immunity Ramsey must show there are material issues of fact related to the question of whether it could be shown that Defendants acted with deliberate indifference to the risk that Hernandez would again assault Ramsey with the excrement as he passed by the cell.

The court finds that qualified immunity shields Defendants from liability in the instant action because, as a matter of law, no rational trier of fact could find that a reasonable prison official would have escorted Ramsey from the showers to his cell along the route that passed Hernandez's cell if such

official contemplated with deliberate indifference that Ramsey would be assaulted with feces a second time. Specifically, no rational trier of fact could find that Defendants would have chosen the same route past Hernandez's cell if they were conscious of the likelihood that Ramsey may be subjected to a second feces throwing assault as such actions also placed Defendants within the same zone of danger given their undisputed close proximity to Ramsey as they escorted him down the prison gallery to his cell. The fact that Defendants were also struck with the feces during Hernandez's assault on all three men reinforces this finding. Moreover, that Defendants had Ramsey examined by the medical staff and provided him with fresh clothing after the first attack demonstrates Defendants understood the seriousness of the risk the first attack posed to Ramsey's safety and health. Simply put, no reasonable prison guard could be expected to act with deliberate indifference to his own health and safety by so exposing himself to such gross conduct. Thus, no reasonable prison guard would believe that such conduct by Defendants constituted deliberate indifference to Ramsey's rights. It is conceivable that Defendants acted negligently even as to their own interests, but on the evidence presented, it cannot be found they acted with deliberate indifference to those interests.

Further, Defendants have proffered several objectively reasonable reasons for not choosing any of the options which Ramsey asserts were available and which would have avoided the second assault. Specifically, Defendants maintain that they would have moved Hernandez to a plexiglass fronted cell earlier, but none was available. Defendants also assert that they chose not to escort Ramsey back to his cell via a different route through a different company nor to temporarily remove Hernandez until Ramsey was returned to his cell as such tactics would have disturbed prison order and create other security risks.

With regard to the maintenance of institutional security within the prisons, absent substantial evidence indicating an exaggerated response by a prison official, deference is to be given to the expert judgment of prison officials as such matters are "peculiarly within the province and professional expertise of corrections officials . . . ." *United States v. Newby,* 11 F.3d 1143, 1146 (3rd Cir.1993), *cert. denied,* 513 U.S. 834, 115 S.Ct. 111, 130 L.Ed.2d 58 (1994). Significantly, Ramsey has not challenged Defendants' assertions that the options proffered by Ramsey were not readily available. Accordingly, the court finds no reasonable prison guard would fail to agree, on this record, that Defendants' decision to escort Ramsey past Hernandez's cell a second time was reasonable. Qualified immunity is therefore warranted.

### 3. *Res Judicata*

Alternatively, even if Defendants are not qualifiedly immune, the court finds that Ramsey's Eighth Amendment claim is barred by the doctrine of res judicata. The doctrines of res judicata and collateral estoppel "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Generally, federal courts have consistently accorded preclusive effect to issues decided by state courts, thereby promoting "the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen, supra,* at 95–96, 101 S.Ct. 411. Section 1983 actions brought in federal court are subject to dismissal on grounds of res judicata and collateral estoppel based on previous state court actions involving the same set of facts. *Allen, supra,* at 104, 101 S.Ct. 411. Further, "[u]nder the Constitution's Full Faith and Credit Clause [as provided in 28 U.S.C. § 1738], federal courts must accord state court judgments the same preclusive effect as other courts within that state." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). Although Defendants premise their summary judgment motion on the doctrines of collateral and judicial estoppel, the court finds that res judicata is the correct legal theory to be applied. Thus, as the issue is the preclusive effect of the prior state Court of Claims judgment, the court applies the principles of res judicata as they would be applied in New York courts.

New York law follows a transactional approach to res judicata which bars the relitigation of not only matters that were litigated between parties in a preceding action, but also any matters that could have been litigated in that action. *Reilly v. Reed*, 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172, 176 (1978). In New York "[i]t is blackletter law that a valid final judgment bars future actions between the same parties on the 'same cause of action.'" *Reilly, supra*, at 174 (quoting 50 C.J.S. Judgments § 598).

Application of the res judicata doctrine is appropriate "when the two causes of action have such a measure of identity that a different judgment in the second [action] would destroy or impair rights or interests established by the first [action]." *Reilly, supra*, at 175 (quoting *Schuylkill Fuel Corp. v. Nieberg Realty Corp.*, 250 N.Y. 304, 165 N.E. 456, 457 (1929) (Cardozo, C.J.)). The purpose of res judicata is to provide finality in the resolution of disputes in order to avoid vexing the parties with future litigation. *Reilly, supra*. Judicial economy and fairness are both considerations which mandate an end to litigation and "[a]fterthoughts or after discoveries however understandable and morally forgivable are generally not enough to create a right to litigate anew." *Reilly, supra*. The policy against relitigation of previously adjudicated disputes bars a subsequent action even where additional discovery or legal research indicates that the prior decision was erroneous regardless of whether such error is attributed to oversight by the parties or error by the court, *Reilly, supra*, as errors by the court are corrected through an appeal. *See Schuylkill Fuel Corp., supra*, at 457. Further, "where the same foundation facts serve as a predicate for each proceeding, differences in legal theory and consequent remedy do not create a separate cause of action," sufficient to avoid res judicata. *Reilly, supra*, at 176 (citing cases).

Nor does New York law permit claim "splitting" as it follows § 61 of Restatement of Judgments, Second which provides:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (citations omitted), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', [sic] are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage.

*Reilly, supra*, at 176 (quoting Restatement of Judgments, Second (Tent. Draft No. 1, 1973), § 61, Dimensions of 'Claim' for Purposes of Merger or Bar General Rule Concerning 'Splitting').

Thus, although a second cause of action may be stated on "the same congeries of fact" as a previously adjudicated claim, yet seek different legal relief or relief under a different legal theory, litigation of the second claim will not be permitted if it is based on the "same gravamen" as the prior adjudicated claim. *Reilly, supra*, at 175. A subsequent claim may also be extinguished in accordance with Restatement § 61.1, as quoted in *Reilly, supra*, although the plaintiff seeks to present evidence, grounds or theories not presented in the first case, or seeks relief not demanded in the first action. *Reilly, supra*, at 176.

However, if two causes of action arise out of the identical transaction, the second may not be barred provided there is a material difference between the requisite elements of proof and evidence needed to sustain recovery in each action. *Reilly, supra*, at 176. Also, a claim that could have been litigated in a prior action will not be precluded by judgment rendered in the prior action provided that (1) the first court was without power to grant all the relief sought in the subsequent action, or (2) a party lacked a full and fair opportunity to litigate the issue or claim sought to be precluded. *West v. Ruff*, 961 F.2d 1064, 1065 (2d Cir.1992) (holding that where inmate plaintiff lacked full and

fair opportunity to litigate negligence claim in Court of Claims, subsequent civil rights action in federal court, although based on same cause of action, was not barred state court decision in prior action).

■ Hence, the question in the instant case is whether Ramsey's § 1983 action is barred by the previous decision rendered by the Court of Claims on the negligence claim which undisputedly emerged from the same nucleus of facts as the instant action. *West, supra,* at 1065. Ramsey could not have litigated his § 1983 claim against the individual officers in the Court of Claims action he brought against the State of New York as Court of Claims has jurisdiction only over civil actions brought against the State. New York Court of Claims Act, § 9(2) (McKinney 1989). The State is not a "person" within the meaning of § 1983 and may not be held liable on a *respondeat superior* theory. *Monell v. New York City Dep't. Of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *De La Rosa v. State of New York,* 173 Misc.2d 1007, 662 N.Y.S.2d 921, 923 (N.Y.Ct.Cl.1997) ("it is settled law that . . . a 42 U.S.C. § 1983 lawsuit cannot be pursued against the State of New York in the Court of Claims").[2]

Although the Court of Claims did not, nor could it, consider Ramsey's § 1983 claim against the individual corrections officers, courts have found in similar circumstances that a later suit asserting § 1983 claims against individuals are nevertheless barred by a previous determination in the Court of Claims based on either res judicata or collateral estoppel. *Cox v. Colgane,* 1998 WL 148424, *5 (S.D.N.Y.1998) (collateral estoppel barred relitigation in § 1983 action on issue of liability based on correction officers' actions which had been characterized as negligent in prior Court of Claims action); *Arce v. Scully,* 1998 WL 103181, *2 (S.D.N.Y.1998) (res judicata barred § 1983 action brought subsequent to Court of Claims action); *McChesney v. Colfield,* 1989 WL 49375, *1 (S.D.N.Y.1989) (had Court of Claims action

been dismissed on the merits, subsequent federal § 1983 action would have been barred by res judicata); *Wright v. Coughlin,* 1987 WL 19633, *2 (S.D.N.Y.1987), *aff'd,* 868 F.2d 1268 (2d Cir.1988) (Table) (subsequent § 1983 action dismissed based on collateral estoppel although defendants had argued res judicata).

*Wright v. Coughlin, supra,* is factually similar to the instant case as in that case a *pro se* inmate commenced a § 1983 action in federal court based on the same issues, assault by correction officers and loss of property, which he had previously litigated in the Court of Claims action. The court stated that "[a]lthough the Court of Claims never considered the action as a civil rights issue, nor as one against the individual officers, the Court of Claims did conclusively resolve the same set of facts on which both claims exist. Whether or not the claim is characterized as negligence or as a violation of civil rights, the issues are the same—did the officers assault [the plaintiff] and may [the plaintiff] recover . . . ?" *Wright, supra,* 1987 WL 19633, at *2. *Arce v. Scully, supra,* is also factually similar as there the plaintiff sought to hold defendant correction officers liable for assaulting him in violation of his civil rights despite the fact that the plaintiff had already litigated an action arising out of the same incident in the Court of Claims. *Arce, supra,* 1998 WL 103181, at *2. The court dismissed the subsequent § 1983 action based on res judicata upon finding that both actions involved that same parties or their privies, the Court of Claims judgment was on the merits, and both actions were based on the same cause of action.

The issue was also considered in the case of an inmate plaintiff who was represented by assigned counsel in a § 1983 action commenced in federal court, yet proceeded *pro se* in a negligence action commenced in the Court of Claims which was based on the same incident as the § 1983 federal action. *West v. Ruff, supra.* The Court of Claims action was decided first with judgment en-

---

**2.** However, state constitutional rights violations have recently been held to be actionable in the New York Court of Claims. *Brown v. State,* 89 N.Y.2d 172, 652 N.Y.S.2d 223, 674 N.E.2d 1129, 1135 (1996). New York Constitution Art. 1 § 5 affords protection against cruel and unusual punishment.

tered in favor of the defendants. Summary judgment was then entered by the district court against the plaintiff in his § 1983 action on the grounds of res judicata/collateral estoppel.[3] The district court's dismissal of the § 1983 action was reversed on appeal on the basis that the plaintiff was denied a full and fair opportunity to litigate his claim in the state proceeding as although the plaintiff proceeded *pro se* in his Court of Claims action, the appointment of counsel in the § 1983 claim indicated the plaintiff's claim could not be adequately presented *pro se*, the plaintiff received only one day's notice of his Court of Claims trial, neither the plaintiff's court appointed counsel nor the Court of Claims judge was aware the plaintiff had parallel, factually identical claims pending in two courts, and a lack of notice of discovery prevented eyewitness testimony on the plaintiff's behalf. *West, supra*, at 1065–66. Significantly, the Court of Appeals did not base its decision on the fact that § 1983 actions may not be asserted in the Court of Claims. Indeed, the court's admonishment of counsel for the state for failing to inform the plaintiff's appointed counsel of the parallel Court of Claims action, stating that "[s]uch notice would prevent relitigation," implicitly recognizes that had this failure not been the fact, no barrier to the application of res judicata existed. *West*, at 1066.[4] The holding in *West* is, therefore, consistent with the basic policy of judicial economy underlying res judicata which requires that a plaintiff, such as Ramsey, choose one forum in which to litigate his case based on his choice of which forum provides him with the best opportunity to recover on his claims. As Ramsey was successful in the Court of Claims, there is no dispute that he had a full and fair opportunity to present his claim in that court.

The court finds, therefore, that the instant action is also barred by res judicata. The Court of Claims conclusively resolved the same set of facts on which both claims exist, *i.e.*, that Defendants acted improperly and violated Ramsey's legal rights when they escorted Ramsey past Hernandez's cell a second time despite the fact that the officers knew that Hernandez had, only a short time earlier, thrown human excrement at Ramsey. The evidence necessary for Ramsey to prevail on his § 1983 claim is the same as the evidence he presented to prevail in the Court of Claims action based on the same incident. Both actions involve the same parties or their privies and the Court of Claims judgment was on the merits.[5] Granting the Court of Claims' decision the finality which was intended in accordance with New York law, *Reilly, supra*, at 175, the court finds that permitting Ramsey's § 1983 action to proceed would destroy or impair the rights or interests afforded the parties by the first action, including the Defendants' rights to avoid being vexed by further litigation involving the identical facts and issues as those resolved in the prior case.

This finding is consistent with *Johnson v. State*, 166 Misc.2d 333, 631 N.Y.S.2d 795 (N.Y.Ct.Cl.1995), where the court dismissed the plaintiff's Court of Claims action alleging negligence against the state on res judicata grounds after determining that the plaintiff had already unsuccessfully litigated the same cause of action in federal court as a civil rights action. The court found that plaintiff's Court of Claims action was an "attempt to re-interject a constitutional claim dressed in negligence garb, giving rise to serious concerns as to the viability of the cause of action." *Johnson, supra*, at 799. The court held that it would "not permit claimant to bootstrap such allegations back into litigation under the guise of a negligence cause of action when the essence of the allegations have been considered and rejected by the

3. In *West, supra*, the court did not distinguish between res judicata and collateral estoppel.

4. The assumption of the court was, apparently, that Plaintiff's assigned attorney would have either discontinued the plaintiff's Court of Claims action or appeared in it and litigated it on the merits with full awareness of the preclusive effect of the Court of Claims judgment.

5. In a § 1983 action, the state is required to indemnify its employees provided the injury or damage did not result from intentional wrongdoing or recklessness on the part of the employees. N.Y. Public Officers Law § 18(4) (McKinney 1988); in the Court of Claims, the state is liable for the actions of its employees under the principle of *respondeat superior*. Court of Claims Act, § 8 (McKinney, 1989).

federal court." *Johnson, supra*. It is significant that in *Johnson* the Court of Claims held the subsequent negligence action barred by the prior civil rights action despite the fact that a finding of negligence by the Court of Claims would not have been inconsistent with the federal court's determination that the defendants' conduct did not rise to a level of constitutional culpability, *i.e.*, that Defendants acted with deliberate indifference. *See* Discussion, *infra*, at 85.

Further, although a finding in the instant § 1983 action that Defendants' actions at issue here constituted deliberate indifference technically would not be inconsistent with the Court of Claims' determination that such actions constituted negligence, the elements of Ramsey's § 1983 claim, if permitted to proceed, would render the prior result meaningless, thus destroying or impairing the rights or interests established therein, including Defendant's right to be free from the vexation of further litigation. *Schuylkill Fuel Corp, supra*, at 457. For example, if Ramsey were successful in the instant action, his recovery would be limited to the $200 judgment awarded by the Court of Claims. *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 511 (2d Cir.1994) (where two theories of recovery are based on a single set of facts and the economic loss sustained is predicated on those same facts, the verdicts under each theory should be identical and only a single recovery allowed). Therefore, unless Ramsey were awarded exactly $200 in the subsequent action, the resultant verdicts would be inconsistent. Moreover, Defendants would be required to run the gauntlet a second time and the Court of Claims action would have resolved nothing as to them despite the fact that it was their conduct at issue in both actions based on the same facts. Conversely, if Ramsey were unsuccessful in the instant action, the effect is again the same: Defendants were forced to defend themselves a second time with the result that the correctness of the first outcome, *i.e.*, a finding of negligence, is placed under a cloud of doubt.

Ramsey elected to proceed in the Court of Claims where he was required to prove the Defendants' challenged actions constituted negligence on the part of the state, Court of Claims Act § 8 (McKinney 1989), as compared to his civil rights action where Ramsey must prove that Defendants' actions were taken under color of state law and demonstrate a greater degree of culpability, deliberate indifference, such that Defendants' actions constituted an infringement on Ramsey's Eighth Amendment rights. *Atkins, supra*, at 103 (holding that compensatory damages are recoverable in § 1983 action only if plaintiff proves that his injuries were caused by actions which arose to a constitutional violation). Ramsey was additionally benefitted by the fact that in pursuing his claim in the Court of Claims, he thereby avoided Defendants' constitutional right to a jury, a demand Defendants have interposed here. To allow Ramsey's § 1983 action to proceed results in the precise claim "splitting" New York's transactional approach to res judicata is designed to avoid. *Reilly, supra*, at 176. It is undisputed that Ramsey could have, had he sued the instant action in federal court, recovered both compensatory and punitive damages, albeit he would have been required to demonstrate that Defendants acted with deliberate indifference. That Ramsey in this case again seeks compensatory damages further demonstrates that he is, in fact, attempting to relitigate the same claim for personal injury. However, Ramsey's success on his Court of Claims action where he was awarded compensatory damages for those injuries based on a finding that the State, through these Defendants, was negligent, decided before the instant action was commenced, has already rendered him whole and he therefore cannot be awarded additional compensatory damages in the instant action.

This conclusion is not affected by the fact that Ramsey seeks and may be entitled to punitive damages in his § 1983 action, a remedy not available in a New York Court of Claims action. *Sharapata v. Town of Islip*, 56 N.Y.2d 332, 452 N.Y.S.2d 347, 437 N.E.2d 1104, 1107 (1982) (Court of Claims Act § 8 does not permit punitive damages to be assessed against the State or its political subdivisions as "the twin justifications for punitive damages—punishment and deterrence—are hardly advanced when applied to a governmental unit .... [as] the persons who bear

the burden of the punishment, *i.e.*, the taxpayers and citizens, constitute the self-same group who are expected to benefit from the public example which the granting of such damages supposedly makes of the wrongdoer") (internal quotations omitted). Compensatory damages are awarded to make a plaintiff whole for actual losses sustained. *Middle East Banking Company v. State Street Bank International*, 821 F.2d 897, 902 (2d Cir.1987). This principle applies equally to § 1983 actions. *Atkins v. New York City*, 143 F.3d 100, 103 (2d Cir.1998). "[N]either compensation nor enrichment is a valid purpose of punitive damages." *Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir.1992). An award of punitive damages to one who has already been made whole by compensatory damages is essentially a windfall to a plaintiff. *O'Neill v. Yield House, Inc.*, 964 F.Supp. 806, 810 (S.D.N.Y.1997). Accordingly, punitive damage awards are limited to that necessary to punish defendants and to deter similar conduct in the future. *Vasbinder, supra*, at 122. In contrast, compensatory damages can also have some punitive effect based on the psychological deterrent of being branded a known violator of the law. *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1285 (2d Cir.1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970).[6]

The objectives of res judicata will not be advanced if the instant action is permitted to proceed to trial solely to determine if punitive damages may be awarded. First, Ramsey has already been made whole by the $200 in compensatory damages awarded him in his Court of Claims action. Second, although the State was found liable in the Court of Claims action, such liability was based on the actions of the Defendants in this case. The court thus finds there is some deterrent effect to the Court of Claims award as Defendants, although not held personally liable, are now viewed as tortfeasors in the eyes of their employer. Future potential similar conduct by these Defendants and others is therefore discouraged. Third, if a jury decided that punitive damages were warranted

in the instant case, such award would indicate Defendants' actions constituted a willful violation of the law, a level of culpability greater than deliberate indifference. As the state in the Court of Claims is liable only if its employees act within the scope of their employment, Court of Claims Act, § 8 (McKinney 1989), and as the state may not be held liable in a § 1983 action for conduct of its employees under the theory of *respondeat superior, Monell, supra*, at 691, 98 S.Ct. 2018, such result could call into question who is actually responsible for payment of the $200 compensatory damages awarded Ramsey in the Court of Claims action, the State or Defendants. These issues would undermine the legal significance of the Court of Claims decision in violation of New York's res judicata policy which seeks to preserve the integrity of its judicial decisions.

Finally, the court observes that the state's coffers have already been debited to pay for the costs associated with Ramsey's Court of Claims action in addition to the payment of the compensatory damages. Requiring further expenditure of taxpayers' money to support relitigation of claims simply to recover punitive damages, an uncertain enterprise even in a strong case, which could have been recovered in the same action along with compensatory damages had Ramsey first pursued his § 1983 action further violates New York's law against claim "splitting." Under New York law, the scope of relief available in the first action is determinative. *Reilly, supra*, at 176. Indeed, Ramsey's § 1983 action may be viewed as an attempt to manipulate the courts without concern for the interests of judicial economy or his own legal interests, rather than to vindicate some valid basis for punitive damages. Given that Ramsey is faced with demonstrating in his § 1983 action that Defendants acted with a substantially higher level of culpability, the instant action may be thus seen as purely vexatious.

This finding is consistent with cases where res judicata was held inapplicable in § 1983 actions commenced after successful litigation

---

**6.** The court's research reveals no case in which this issue has been addressed by the Second Circuit, but rather only one unpublished Second Circuit case in which the conclusion is suggested

in the context of property damage. *See Odom v. New York State Department of Correctional Services*, 122 F.3d 1057 (2d Cir.1995) (Table).

in New York state court Article 78 proceedings and petitions for habeas corpus. In *Davidson v. Capuano,* 792 F.2d 275 (2d Cir. 1986), the court held that a prisoner's § 1983 action filed in federal court was not barred by a prior favorable adjudication in state court Article 78 proceeding based on the same facts as the state court was without power to award compensatory damages to make the plaintiff whole. Likewise, in *Burgos v. Hopkins, supra,* the court held that a prisoner is not precluded from bringing a § 1983 action in federal court subsequent to prevailing on a petition in state court for habeas relief as the relief which may be granted on the habeas petition does not include the imposition of damages. *Burgos, supra,* at 791. As such, a plaintiff may not be made whole despite prevailing on an Article 78 action or a habeas petition in state court. It is significant that permitting a subsequent § 1983 action following an Article 78 action or a petition for habeas relief does not present the same risk for inconsistent results as could arise in the instant action. In contrast, here, Ramsey has already been made whole by the compensatory damages awarded him by the Court of Claims. Accordingly, the fact that the Court of Claims was without power to grant Ramsey punitive damages in his prior state court action does not bar this court from finding that the doctrine of res judicata bars his instant § 1983 action.[7]

In sum, § 1983 actions are subject to state law principles of res judicata and as New York law bars Ramsey's later § 1983 claim, this court must similarly bar Ramsey's instant action to accord full faith and credit to the prior state court judgment. It is irrelevant that neither punitive damages nor equitable relief was available in the prior state Court of Claims action.

Thus, even if Defendants were not entitled to qualified immunity with regard to the instant action Defendants' motion for summary judgment should also be GRANTED based on res judicata.

### 4. *Retaliation Claim*

 Ramsey further claims that Defendant Busch harassed and threatened him in retaliation for pursuing the complaints Ramsey filed with regard to the incident. Specifically, Ramsey maintains that Busch told other inmates Ramsey was a "snitch," and attempted to prevent Ramsey from filing further complaints by confiscating his stationery supplies. Amended Complaint, ¶¶ 11, 12. Defendants seek summary dismissal of this claim on the basis that it is conclusory. Defendants' Memorandum of Law at 17–18.

Ramsey has not indicated which right, privilege or immunity protected by the Constitution of laws of the United States he was deprived by Busch's alleged actions as required to state a claim under § 1983. The Supreme Court, however, has directed that *pro se* pleadings should be considered under "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Here, the court finds, based on Ramsey's assertions in his Amended Complaint that his First, Fifth, Eighth and Fourteenth Amendment rights were violated that the First and Fourteenth Amendments provide the foundation for Ramsey's retaliation claim and construes his complaint as such. *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988) (allegation that state prison officials retaliated against inmate in violation of § 1983 implicates the "right to petition the government for redress of grievances as guaranteed by the First and Fourteenth Amendments").

Retaliation claims which are wholly conclusory may be summarily dismissed absent any showing by the non-moving party of some specifics to support such claim. *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). As stated, in the instant case, Ramsey did not respond in opposition to Defendants' summary judgment motion on its merits. More-

---

7. Nor would a request for injunctive relief change the result. Just as punitive damages are not available in the Court of Claims, *Sharapata v. Town of Islip,* 56 N.Y.2d 332, 452 N.Y.S.2d 347, 437 N.E.2d 1104 (1982), the same policies underlying res judicata apply with similar force to a subsequent attempt to obtain an equitable as well as a damage remedy. Ramsey seeks no equitable relief in the instant action.

over, Defendants have not admitted any of the facts of the retaliation claim, unlike Ramsey's Eighth Amendment claim, to which the underlying facts have been conceded by Defendants. As "[m]ere conclusory allegations" cannot by themselves create a genuine issue of material fact, *Lipton, supra,* at 469, by failing to provide some evidence in support of his retaliation claim, Ramsey has failed to meet his burden to defeat summary judgment of such claim. Accordingly, summary judgment dismissing Ramsey's retaliation claim under the First and Fourteenth Amendments is GRANTED.

**5. *Claims Against Defendant Sgt. John Doe***

 Ramsey asserts claims against Defendant Sargent John Doe, identified in the Amended Complaint as Sargent Walters, on the basis that in his supervisory capacity over Defendants Busch and Poss, "Sgt. Walters was aware of or should have been aware of the unlawful conduct of defendants Busch and Poss and failed to take corrective action." Amended Complaint, ¶ 15. It is well settled that no claim of inadequate supervision under 42 U.S.C. § 1983 can be made against a supervisor unless a constitutional violation by the persons supervised is found. *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *Ricciuti v. N.Y.C. Transit Authority,* 124 F.3d 123 (2d Cir.1997). As the record supports summary dismissal of the constitutional claims against Defendants Busch and Poss, Ramsey cannot assert a constitutional claim based on inadequate supervision against their supervisor.

Accordingly, summary judgment dismissing Ramsey's claims against Defendant Sgt. John Doe is GRANTED.

## CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment (Doc. # 55) is GRANTED.

SO ORDERED.